DANA F. COLE & COMPANY, A PARTNERSHIP, APPELLANT, V. KENNETH BYERLY, APPELLEE.

320 N.W.2d 916

Filed June 18, 1982.  No. 82-030.

Rollin R. Bailey of Bailey, Polsky, Cada & Todd, for appellant.

Charles R. Maser of Harold E. Connors & Charles R. Maser, P.C., for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

WHITE, J.

This is an action in equity brought by the plaintiff, Dana F. Cole & Company, a Lincoln-based accounting partnership, to enforce a covenant not to compete against a former employee.

The case was tried to the District Court of Holt County, Nebraska. The trial court found that the contract was valid, denied the plaintiff's request for an injunction, and awarded damages of $1,000 to the plaintiff.

Since this is an equity case, we review the record de novo and reach an independent conclusion without being influenced by the findings of the trial court, except that where credible evidence is in conflict, we must give weight to the fact that the trial court saw the witnesses and observed their demeanor while testifying. *Philip G. Johnson & Co. v. Salmen, ante* p. 123, 317 N.W.2d 900 (1982); *Sturm v. Mau,* 209 Neb. 865, 312 N.W.2d 272 (1981); *Schmidt v. Henderson,* 148 Neb. 343, 27 N.W.2d 396 (1947).

The evidence reveals that the plaintiff has been engaged in the public accounting business since 1949, with its principal office in Lincoln and five branch offices located in Ord, Broken Bow, Grand Island, Beatrice, and Atkinson-O'Neill. Kenneth Byerly was hired by Dana F. Cole & Company in August 1974 to be office manager of the O'Neill, Nebraska, branch office. Byerly began work the last week of August 1974. During the period from August through December, Byerly worked under the assistant manager at the O'Neill office to learn the operation of

the branch office. On December 26, 1974, a written employment agreement was signed by the parties. Byerly assumed the duties of manager on January 1, 1975. The employment agreement contained the following clause: "For a period of two years after the termination of this Agreement, Byerly will not, within the area hereafter described, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner, with any enterprise carrying on the business of public accounting, public bookkeeping, tax preparation, or the operation of a business advisory or consulting service, or any other business similar to the type of business conducted by the company in the State of Nebraska at the time of the termination of this Agreement. The area within which such activities are prohibited is within a radius of 75 miles in each direction from the city limits of Atkinson, Nebraska."

On August 30, 1981, defendant notified the plaintiff in writing that he was resigning effective September 30, 1981. Mr. Warren Hinze, managing partner of plaintiff, testified that after receipt of the written resignation, he made immediate contact with Byerly to learn why he was resigning. Byerly indicated to Hinze that he was disappointed in not being made a partner.

During the period that Byerly was employed by the plaintiff, the plaintiff added three new partners. Two of the three had considerably more time and experience with the partnership, while the other, an attorney as well as a certified public accountant, was a partner in another firm prior to his employment and he brought his personal accounts with him.

After Byerly left the plaintiff's employ, he opened his own accounting business in O'Neill, Nebraska. The evidence reflects that Byerly had accepted some of the plaintiff's clients. This action ensued.

Mr. Warren Hinze testified that when previous

managers had left the various branch offices and entered into their own practice in the area, the plaintiff lost 40 percent of its clients. As a result, the plaintiff required restrictive covenants not to compete in all employment contracts of managers. The managers of Beatrice, Broken Bow, and O'Neill branch offices were required to sign employment agreements with covenants not to compete. The Ord and Grand Island branch offices were protected by a partnership agreement. Mr. Hinze also testified that the branch office first opened in Atkinson, Nebraska, in 1967. From 1967 to 1974 it operated at a loss. The first profitable year was 1974. In May 1974 the manager at the Atkinson-O'Neill office resigned. In August 1975, Mr. Withrow, the assistant manager in the Atkinson-O'Neill office, left the plaintiff's employ. Approximately 40 percent of the plaintiff's clients followed Mr. Withrow. From 1975 to the time Mr. Byerly left, the plaintiff's O'Neill office again operated at a loss.

In testifying as to the reasonableness of the 75-mile restriction, Mr. Hinze stated that 75 to 80 percent of the plaintiff's clients served by the O'Neill office were located within a 75-mile radius.

In *Philip G. Johnson & Co. v. Salmen, ante* p. 123, 128, 317 N.W.2d 900, 903-04 (1982), this court stated: "At the early common law, a contract in restraint of trade was held to be against public policy and void. Over the years we have developed a balancing test and have held that such restraints, if reasonable, are enforceable. The considerations to be balanced are the degree of inequality in bargaining power; the risk of the covenantee losing customers; the extent of respective participation by the parties in securing and retaining customers; the good faith of the covenantee; the existence of sources or general knowledge pertaining to the identity of customers; the nature and extent of the business position held by the covenantor; the covenantor's training, health, edu-

cation, and needs of his family; the current conditions of employment; the necessity of the covenantor changing his calling or residence; and the correspondence of the restraint with the need for protecting the legitimate interests of the covenantee.''

On the basis of the evidence adduced at trial, we find that the contract between the plaintiff and the defendant is valid. The evidence shows that the branch managers have a very personal relationship with the clients served. On the basis of past experience, Dana F. Cole & Company had the need to protect itself from the risk of an office manager taking clients with him when he left its employ. While the trade area within which the covenant controls seems broad, there is no evidence introduced which would show that the area is actually smaller. In fact, Mr. Hinze testified that 75 to 80 percent of the clients were located in the 75-mile radius. There is no inequality in bargaining power, and even though enforcing the covenant against Mr. Byerly would impose a burden upon him, it is still reasonable in light of the evidence produced. There was no evidence adduced at trial which would support the District Court's award of nominal damages in this case. The record is completely devoid of any specific monetary losses sustained by the plaintiff, prior to trial, as a result of the defendant's resignation and subsequent competition. We therefore affirm the District Court's finding that the contract was valid; we reverse as to damages and the holding that no injunction should issue; and we remand for issuance of an injunction.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.