CHARLIE NEKUDA, JR., ALSO KNOWN AS NEKUDA FARM SUPPLY, APPELLEE, V. DAVID J. VINCENT, APPELLANT.

330 N.W.2d 477

Filed February 18, 1983. No. 81-764.

Joseph E. Twidwell, for appellant.

Robert C. Guenzel of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and MORAN, D.J.

PER CURIAM.

This case arises out of a controversy concerning a contract for the construction of a metal grain storage building.

On August 17, 1977, the plaintiff and the defendant entered into a written contract in which the plaintiff agreed to furnish the labor and materials required to construct a 60-foot by 140-foot Butler "Farmsted" building. The building was to be equipped for grain storage and constructed on the defendant's farm for a total contract price of $40,234.45. The defendant paid 15 percent down by check dated October 4, 1977, with the balance due on completion. The contract did not provide for any completion date.

The building had been substantially completed by December 20, 1977, and in January 1978 the defendant placed approximately 22,000 bushels of corn in the building. On December 30, 1977, the plaintiff requested payment of the balance of the contract price so that he could include the amount in his income for the calendar year. Pursuant to an agreement between the parties, the defendant delivered his check in the amount of $34,199.70. On January 2, 1978, the plaintiff deposited the same amount in the defendant's bank account, thus refunding the payment made on December 30, 1977.

The defendant complained about snow blowing into the building and later about water leaking into the building. The defendant did not store additional grain in the building and eventually removed the corn that had been placed in the building in January 1978. The plaintiff made several attempts to repair the building but the defendant was not satisfied.

On August 11, 1978, the plaintiff commenced this action to recover the balance due on the contract. The defendant's answer alleged the plaintiff had orally agreed to complete the building by October 10, 1977; that the defendant was required to store corn upon the ground because the building had not been completed by November 30, 1977, the date on which the defendant completed his harvest; and that the building was defective and not suitable for grain storage and was of no use to the defendant. The defendant counterclaimed for loss of rental on the

building; damage to grain; expense of moving and drying grain, including equipment purchased to salvage the grain; insurance purchased on the building; loss of profits; and the downpayment.

The trial court found generally for the plaintiff; that the plaintiff had substantially completed the contract; that the tender of a check for the balance due on the contract by the defendant was "an agreement by the Defendant that the contract had been substantially performed"; and that the plaintiff was entitled to recover $34,199.70, with interest and costs, from the defendant.

Both parties filed motions for new trial, which were overruled. The defendant has appealed.

The assignments of error in substance allege that the evidence does not support the judgment and there was a breach of a warranty of merchantability in regard to the materials supplied under the contract.

As we view the record, the Uniform Commercial Code has no application in this case. The parties contracted for the construction of a building upon the defendant's land. The plaintiff was obligated to furnish labor and materials. The contract was not a contract for the sale of "goods." In any event, the defendant's complaints relate not to the materials supplied but to the manner in which the building was assembled and to the delay in completion of the work.

The evidence does support a finding of substantial performance but not upon the basis of the check delivered to the plaintiff by the defendant on December 30, 1977. The evidence is undisputed that the payment was for the convenience of the plaintiff and was not intended to be a payment of the balance due on the contract. In accordance with the understanding between the parties, the payment was refunded to the defendant by the plaintiff on January 2, 1978.

The defendant intended to pay for the building by obtaining a loan through the ASCS. The building

was inspected by the county executive director for the ASCS on February 9, 1978, and approved. The loan was approved and the proceeds disbursed to the defendant shortly thereafter.

The defendant's principal complaint relates to his claim of snow blowing into the building and water leaking into the building. The evidence is that the snow entered the building because of an open space under the eaves of the building. Apparently, this was a part of the design of the building for the purpose of ventilation. After the defendant complained about this feature the plaintiff closed the openings.

The evidence indicates that water entered the building because the caulking between some panels was defective or not properly installed, and some bolts or screws were improperly installed. The evidence does not disclose what would be required to remedy this defect, although it does disclose that the defect may be corrected.

If a construction contract is substantially performed, the damage which the owner suffers because of defective workmanship or unsuitable materials used is measured by the reasonable cost of remedying the defects. *Jones v. Elliott,* 172 Neb. 96, 108 N.W.2d 742 (1961). However, if the defects cannot be remedied without reconstruction of or material injury to a substantial portion of the building, the measure of damages is the difference between its value as constructed and what its value would have been if built according to the contract. *Id.*

The finding that there had been substantial performance of the contract by the plaintiff is sustained by the record. The evidence, however, does establish that the defendant is entitled to damages resulting from defective caulking and defective installation of bolts and screws. He is not entitled to consequential damages in view of the general finding by the trial court for the plaintiff which finds support in the record.

The cause is remanded to the District Court for

further proceedings to ascertain the damages due the defendant for defective caulking and defective installation of bolts and screws in the building.

AFFIRMED IN PART, AND IN
PART REVERSED AND REMANDED
FOR FURTHER PROCEEDINGS.

CAPORALE, J., dissenting in part.

I must, for the reasons stated in *LeRoy Weyant & Sons, Inc. v. Harvey,* 212 Neb. 65, 321 N.W.2d 429 (1982), dissent from that portion of the majority opinion which remands the counterclaim for further proceedings. The majority opinion herein correctly states the rule as to the defendant-counterclaimant's measure of damages. It fails to make clear, however, that Mr. Vincent's theory of damages was that the building should be dismantled and removed. Accordingly, none of his evidence was directed to the proper measure of recovery.

Mr. Vincent's expert testified the building can be "rehabilitated" and outlined ways in which that might be done, but there is no evidence concerning the cost of doing so. We have held that one seeking to recover in a breach of contract action must not only show his right to recover but must also show the elements and facts which comprise the measure of his recovery. *Midlands Transp. Co. v. Apple Lines, Inc.,* 188 Neb. 435, 197 N.W.2d 646 (1972). It is true that in *Smith v. Erftmier,* 210 Neb. 486, 315 N.W.2d 445 (1982), a case involving an improperly constructed grain bin, we allowed the owner to recover damages in the absence of evidence concerning the difference in the value of the bin as constructed compared to its value had it been properly constructed. The distinction is that in *Smith v. Erftmier* the owner did adduce evidence of the cost of repair. It was the builder who claimed the building could not be repaired and who failed to offer evidence to support his claim in that regard. More recently, in *"L" Investments, Ltd. v. Lynch,* 212 Neb. 319, 322 N.W.2d 651 (1982), a case involving negligent

damage to an improvement on realty, we placed upon the party seeking recovery the burden of proving the cost of repair, and upon the party against whom recovery is sought, the burden, if he so believes, of proving that such cost exceeds the market value of the property before the damage. One seeking to recover damages because of an improperly constructed building, therefore, has the burden of proving the cost of making it conform to the state in which it should have been constructed; the party against whom recovery is sought, if he so believes, has the burden to establish that such cost exceeds the difference in value between the building as constructed compared to its value if it were to have been constructed properly. Mr. Vincent's failure to prove the cost of repair is fatal; his counterclaim should be dismissed.

WHITE, J., and MORAN, D.J., join in this dissent.